UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

LEHMAN BROTHERS HOLDINGS INC., *et al.*,

        Debtors.

Chapter 11

No. 08-13555 (JMP)

(Jointly Administered)

VEYANCE TECHNOLOGIES, INC.,

        Plaintiff,

    v.

LEHMAN BROTHERS SPECIAL FINANCING INC.,

        Defendant.

Adversary Proceeding

No. 09-01535 (JMP)

## VEYANCE TECHNOLOGIES, INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS RULE 67 MOTION TO DEPOSIT FUNDS WITH THE COURT

Latham & Watkins LLP
885 Third Avenue
Suite 1000
New York, NY 10022
(212) 906-1200

Kasowitz, Benson, Torres &
Friedman LLP
1633 Broadway
New York, New York 10019
(212) 506-1747

*Attorneys for Plaintiff*
*Veyance Technologies, Inc.*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ii

I.  PRELIMINARY STATEMENT ................................................................................1

II. BACKGROUND ......................................................................................................2

    A.  The Parties ......................................................................................................2

    B.  LBSF And Veyance Enter Into Unsuccessful Negotiations Over A Potential Swap Transaction ..........................................................................3

    C.  The First Payment Under The Draft Confirmation Would Apparently Be Due On December 11, 2009 ....................................................................4

III. ARGUMENT ...........................................................................................................4

    A.  Rule 67 ............................................................................................................4

    B.  There Is A Dispute As To Whether LBSF Is Entitled To Funds That Would Be Due Under The May 22 Draft Confirmation .........................................5

        1.  Veyance and LBSF Expressly Reserved The Right Not To Be Bound In The Absence Of A Writing ....................................................6

        2.  There Has Been No Partial Performance ..............................................7

        3.  Veyance And LBSF Never Agreed On The Terms Of The Draft Confirmation ....................................................................................7

        4.  The Confirmation Is the Type Of Contract That Is Typically Committed To Writing ....................................................................8

    C.  Rule 67 Is An Appropriate Mechanism In This Situation ......................................8

IV. CONCLUSION .......................................................................................................10

i

# TABLE OF AUTHORITIES

**CASES**            **PAGE(S)**

*Antaeus Enters. v. SD-Burn Real Estate, LLC,*
No. 05 Civ. 6396 (S.D.N.Y. 2007) ...................................................................... 10

*Arcadian Phosphates, Inc. v. Arcadian Corp.,*
884 F.2d 69 (2d Cir. 1989) .............................................................................. 6

*Bear Stearns Investment Prods. v. Hitachi Auto. Prods. (USA), Inc.,*
401 B.R. 598 (S.D.N.Y. 2009) ....................................................................... 6, 7, 8

*B.F. Goodrich Co. v. Murtha,*
2004 WL 3249236 (D. Conn. Aug. 24, 2004) ................................................... 4

*Chrysler Capital Corp. v. Se. Hotel Props. Ltd. P'ship,*
697 F. Supp. 794 (S.D.N.Y. 1988) .................................................................. 8

*Daniel Koury Constr. Inc. v. Issacson Structural Steel, Inc.,*
2006 WL 2992730 (D. Conn. Oct. 20, 2006) ................................................... 4

*Engineered Medical Systems, Inc. v Despotis,*
2006 WL 1005024 (S.D. Ind. 2006) ................................................................ 8

*Gulf States Utilities Co. v. Alabama Power Co.,*
824 F.2d 1465 (5th Cir. 1987) ........................................................................ 9

*Kansas City S. Ry. v. Borrowman,*
2009 WL 3188305 (C.D. Ill. Sept. 30, 2009.) ................................................. 10

*Kargo Inc. v. Pegaso PCS,*
2008 WL 4579758 (S.D.N.Y. Oct. 14, 2008) ................................................... 6, 7

*R.G. Group, Inc. v. The Horn & Hardart Co.,*
751 F.2d 69 (2d Cir. 1984) ............................................................................. 5, 7

*Reprosystem, B.V. v. SCM Corp.,*
727 F.2d 257 (2d Cir. 1984) ........................................................................... 6, 7

*Winston v. Mediafare Entm't Corp.,*
777 F.2d 78 (2d Cir. 1985) ............................................................................. 5, 7

**RULES**

Fed. R. Bankr. P. 7067 ..................................................................................... 1

Fed. R. Civ. P. 67 ............................................................................................. 1, 4, 8, 9

Ohio R.C. Section 1335.05 ............................................................................... 5

Plaintiff Veyance Technologies, Inc. ("Veyance"), by and through its counsel, hereby submits this Memorandum of Law in support of its motion (the "Rule 67 Motion") to deposit funds with the Court pursuant to Rule 67 of the Federal Rules of Civil Procedure, made applicable by Rule 7067 of the Federal Rules of Bankruptcy Procedure.[1]

## I.   PRELIMINARY STATEMENT

In this adversary proceeding, Veyance seeks a declaration that a purported interest rate swap agreement unsuccessfully negotiated between Veyance and Lehman Brothers Special Financing Inc. ("LBSF") in 2008 is not a valid and binding contract. Under black-letter contract law, no valid and binding contract was formed because, among other things: (1) the purported contract, which LBSF drafted, expressly provides that it would become effective only "upon due execution and delivery," (2) LBSF and Veyance continued unsuccessfully to negotiate open material terms of the potential agreement for months after LBSF circulated the draft contract; (3) Veyance never signed the draft contract LBSF prepared, despite LBSF's repeated requests that it do so, and (4) Veyance repudiated in writing any purported contract after it became evident that the parties would not be able to reach agreement on the open material terms.

By this Rule 67 Motion, Veyance seeks a simple and equitable solution to a genuine and imminent legal quandary. Assuming that the failed draft agreement was[?] valid and binding—and it is not—Veyance's first payment to LBSF would apparently be due on December 11, 2009. On one hand, if there is no valid contract, by performing Veyance would be making unnecessary million-dollar payments under a contract that Veyance never executed and expressly repudiated. On the other hand, if there is a valid contract, by failing to make a

---

[1]   In making this motion, Veyance is of course not conceding that a contract exists, or that if a contract exists LBSF could enforce it; indeed, the purpose of Rule 67 is to allow a deposit of disputed funds while the right to those funds is litigated.

payment Veyance risks defaulting, which arguably would require the immediate payment of the entire several-million dollar present value of the multi-year swap contract. Neither alternative is tenable or fair to Veyance. Nevertheless, evidently hoping to achieve a *de facto* victory before a *de jure* determination can occur, LBSF has refused to stipulate that Veyance can deposit the December 11, 2009 payment with the Court. Likewise, LBSF has refused to agree not to declare an event of default pending the Court's determination of the merits.

Veyance seeks only to preserve the status quo, without prejudice to either side, pending a judicial declaration as to whether a valid and binding contract exists. Courts have used Rule 67 for this precise purpose. Accordingly, Veyance respectfully requests that the Court issue an Order granting Veyance permission to deposit the disputed payments with the Court as they would come due if there were an enforceable contract between the parties.[2]

## II.   BACKGROUND

### A.   The Parties

Veyance is a Delaware corporation with its principle place of business in Fairlawn, Ohio, and manufactures and markets Goodyear Engineered Products. LBSF is a corporation organized under the laws of the state of Delaware, and has its principle executive office in New York, New York. LBSF is an affiliate of Lehman Brothers Holdings, Inc. ("LBHI"). In the fall of 2008, LBSF and LBHI filed petitions for relief under chapter 11 of the Bankruptcy Code. LBSF and LBHI, with their subsidiaries and affiliates, were, at the time of the negotiations of the proposed swap, the fourth largest investment bank in the United States.

---

[2]  Although LBSF has not calculated the amount of the first payment (as it would have been required to if there were a contract), Veyance estimates that the first payment would be not more than $941,850, and accordingly requests permission to make an initial deposit of $941,850 on December 11, 2009. Subsequent deposits will be calculated and due each three months, although Veyance believes that, given the narrow legal and factual issues here, the Adversary Proceeding can be concluded quickly before many additional payments will be made.

**B.**   **LBSF And Veyance Enter Into Unsuccessful Negotiations Over A Potential Swap Transaction.**

In early 2008, Veyance approached LBSF to negotiate a potential interest rate swap transaction. Veyance and Lehman had not previously entered into a swap agreement, and thus there was no prior contract or standard terms between the parties. (Declaration of Christopher Harris, dated Dec. 1, 2009 ("Harris Decl.") Ex. 2: Answer at ¶ 7.)

By May 2008, the parties had orally negotiated certain economic terms, but had not negotiated, much less reached agreement upon, other material terms. On May 22, 2008, LBSF sent a draft confirmation of the proposed swap to Veyance (the "May 22 Draft Confirmation"). (Harris Decl. Ex. 3: Draft Confirmation.) Under the May 22 Draft Confirmation, Veyance would be obligated to pay a fixed rate of interest on $100,000,000, and LBSF would be obligated to pay a floating rate. *See id.* Beginning on December 11, 2009 until September 11, 2011, the party owing the larger amount would make payments on the 11th day of each March, June, September, and December, for the total net amount of interest accrued during the previous three months. (Harris Decl. Ex. 3.) In addition to these terms, the May 22 Draft Confirmation also contained significant material terms to which Veyance had not agreed. *See id.*; *see also infra* at 7 n.3. From July through the beginning of September 2008, Veyance (through its outside counsel Latham & Watkins) and LBSF exchanged emails negotiating these outstanding terms, which would have limited Veyance's flexibility in working with its lenders and investors. (Harris Decl. Exs. 4-9; *infra* at 7 n.3.)

The Draft Confirmation states that "[LBSF] and [Veyance] each represent[] that **upon due execution and delivery** of this Confirmation, it will constitute a legally valid and binding obligation . . . ." (Harris Decl. Ex. 3 at 1-2 (emphasis added).) On July 7, 2008, July 17, 2008, and September 3, 2008, LBSF repeatedly emailed Veyance requesting that Veyance

3

execute the Draft Confirmation. (Harris Decl. Exs. 4, 5 & 9.) Ultimately, Veyance did not execute the Draft Confirmation because the parties never reached mutually agreeable terms, and thus no contract was formed. To that end, on November 24, 2008, Veyance sent a letter to LBSF indicating that Veyance was "not interested in entering into" the proposed swap. (Harris Decl. Ex. 10.) The parties exchanged further letters in April, August and September 2009 stating their disagreement over whether a contract existed. (Harris Decl. Ex. 11.)

### C. The First Payment Under The Draft Confirmation Would Apparently Be Due On December 11, 2009.

If Veyance does not make a payment on December 11, 2009, Veyance anticipates that LBSF will attempt to declare an event of default. To date LBSF has refused to agree not to declare an event of default in order to allow the Court time to decide whether a contract exists. (Harris Decl. at ¶ 18.) If an event of default were properly declared, LBSF could assert that Veyance must pay up-front the entire present value of the purported swap (Harris Decl. Ex. 3), which would be many millions of dollars.

## III. ARGUMENT

### A. Rule 67

Rule 67 provides that:

> [i]f any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party . . .may deposit with the court all or part of the money or thing, whether or not that party claims any of it.

Fed. R. Civ. P. 67. "[A] Rule 67 deposit is proper where there is a dispute over funds." *B.F. Goodrich Co. v. Murtha*, 2004 WL 3249236, at *3 (D. Conn. Aug. 24, 2004); *see also Daniel Koury Constr. Inc. v. Issacson Structural Steel, Inc.*, 2006 WL 2992730, at *2 (D. Conn. Oct. 20, 2006). The decision of whether or not to grant Rule 67 relief is a discretionary one. *See, e.g., B.F. Goodrich Co.*, 2004 WL 3249236, at *3; *Daniel Koury Constr.*, 2006 WL 2992730, at *2.

**B.** **There Is A Dispute As To Whether LBSF Is Entitled To Funds That Would Be Due Under The May 22 Draft Confirmation.**

As the Complaint and Answer make clear, the parties dispute whether an enforceable agreement exists, and thus whether LBSF is entitled to sums that would be due under the May 22 Draft Confirmation. Likelihood of success on the merits is not an element of entitlement to relief under Rule 67. Nevertheless, as the relief is discretionary, Veyance will summarize its position to demonstrate that it legitimately disputes LBSF's entitlement to the funds.

Putting aside for now a potentially complex choice of law analysis (either Ohio or New York law will likely control the outcome of this case), Veyance will prevail on the merits under the law of either state. First, under Ohio law, this case is exceedingly simple. By its terms, this alleged unsigned agreement (supposedly entered into in May 2008 and not to be completed until December 2011) is for more than a year, and thus violates Ohio's statute of frauds. *See* Ohio R.C. Section 1335.05.

Second, "[u]nder New York law, if parties do not intend to be bound by an agreement until it is in writing and signed, then there is no contract until that event occurs. This rule holds even if the parties have orally agreed upon all the terms of the proposed contract." *R.G. Group, Inc. v. The Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984). New York courts analyze four factors to determine whether parties intended to be bound prior to executing a written agreement: (1) whether there was an express reservation of the right not to be bound without a writing; (2) whether there has been partial performance; (3) whether all terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract usually committed to a writing. *See Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). Here, all four *Winston* factors dictate that there is no binding agreement.

1.   Veyance And LBSF Expressly Reserved The Right Not To Be
     Bound In The Absence Of A Writing

Whether "the parties reserved the right not to be bound absent a writing 'is the

most important' factor in determining whether a . . . binding preliminary agreement exists." *Bear*

*Stearns Inv. Prods. v. Hitachi Auto. Prods. (USA), Inc.*, 401 B.R. 598, 618 (S.D.N.Y. 2009)

(quoting *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989)).

Here, the May 22 Draft Confirmation explicitly required each party to execute

and deliver the Draft Confirmation before it would become binding: "Party A and Party B each

represents that ***upon due execution*** and delivery of this Confirmation, it will constitute a legally

valid and binding obligation, enforceable against it in accordance with its terms . . . ." (Harris

Decl. Ex. 3 at 1-2) (emphasis added).) The signature page also provides that Veyance must

"confirm [its] agreement with the foregoing by executing th[e] Confirmation and returning" it to

LBSF. *Id.* at 7. And finally it provides a line for Veyance's signature. *Id.* Courts have

repeatedly held that nearly identical provisions demonstrate "the parties' intent and

understanding that the document was not merely memorializing a prior oral agreement, but rather

that the [a]greement needed to be formally executed by both parties to take effect." *Kargo Inc. v.*

*Pegaso PCS*, 2008 WL 4579758, at *8 (S.D.N.Y. Oct. 14, 2008); *see also Reprosystem, B.V. v.*

*SCM Corp.*, 727 F.2d 257, 262 (2d Cir. 1984); *Bear Stearns*, 401 B.R. at 619.

The correspondence between Veyance and LBSF confirms that both parties

understood there was no binding contract prior to execution. LBSF's May 22, 2008 email

attaching the Draft Confirmation requested that Veyance "review and have [it] signed at

[Veyance's] earliest convenience." (Harris Decl. Ex. 3.) From July to September 2008, LBSF

sent at least three additional emails requesting that Veyance execute the Draft Confirmation.

(Harris Decl. Exs. 4, 5 & 9.) The correspondence between Veyance and LBSF thus "strongly indicate[s] that the parties understood throughout the negotiating process that the [a]greement would not be binding until it was signed and executed by both parties." *Kargo*, 2008 WL 4579758 at *8. Courts have held that very similar correspondence shows there was no contract without execution. *See, e.g., Bear Stearns*, 401 B.R. at 618-19; *R.G. Group*, 751 F.2d at 75 (citing *Reprosystem, B.V.*, 727 F.2d at 262).

### 2. There Has Been No Partial Performance

The absence of partial performance by either party here also confirms that there was no intent to be bound prior to an executed agreement. *See Bear Stearns*, 401 B.R. at 620-21.

### 3. Veyance And LBSF Never Agreed On The Terms Of The Draft Confirmation

The open terms further confirm that there was no contract. To support an intent to be bound without a signed contract, there must be "literally nothing left to negotiate or settle, so that all that remained to be done was to sign what had already been fully agreed to." *R.G. Group*, 751 F.2d at 76. "[N]egotiating 'numerous' contract drafts after reaching a preliminary agreement on some terms" is strong evidence that the parties intend not to bind themselves until a written agreement has been executed. *Bear Stearns*, 401 B.R. at 619. Far from there being "literally nothing left to negotiate or settle," here there were numerous terms in the Draft Confirmation left to negotiate. Indeed, as LBSF concedes the parties exchanged numerous emails and drafts between July and September 2008 attempting to negotiate the remaining terms. (Harris Decl. Ex. 2 at ¶ 15; Harris Decl. Exs. 4-9.)[3]

---

[3] Moreover, although it does not matter whether these open items were "technical" or "minor," *Winston*, 777 F.2d at 82-83, here the open items were quite material to Veyance (and apparently to LBSF, since it did not agree to Veyance's terms). They included provisions that could have given LBSF veto power over certain provisions in or amendments to Veyance's first lien credit documents, which are a major portion of its capital structure. (Harris Decl. Ex. 9 at 3, 8.) Another disputed provision would have required Veyance to obtain LBSF's prior written consent before releasing collateral, or amending certain provisions of the loan documents. *Id.* Finally,

4.    The Confirmation Is The Type Of Contract That Is Typically
      Committed To Writing

Finally, this type of contract is typically committed to writing.  First, the contract is complex, requiring payments at three-month intervals, calculated according to particular formulas, over several years.  Second, the amount at issue (a notional amount of $100,000,000) also suggests that this contract was not intended to be binding without execution.  *See Chrysler Capital Corp. v. Se. Hotel Props. Ltd. P'ship*, 697 F. Supp. 794, 803-04 (S.D.N.Y. 1988); *Bear Stearns*, 401 B.R. at 622.  Furthermore, LBSF's own conduct here, as an experienced participant in the swap industry, confirms that this type of contract is typically committed to writing.  Far from resting on the May 16, 2008 conversation, Lehman instead drafted the Draft Confirmation and repeatedly requested that Veyance execute it.

**C.    Rule 67 Is An Appropriate Mechanism In This Situation.**

As noted above, a deposit pursuant to Rule 67 is appropriate here because the parties dispute whether LBSF is entitled to any payments under the Draft Confirmation.  LBSF without explanation has refused to agree to Veyance making these deposits.  LBSF's apparent goal is to force Veyance into the Catch-22 of deciding whether to make a payment it does not believe it is required to make or to risk a default.

Courts have held that Rule 67 is an appropriate mechanism to avoid this situation, i.e., a party forced to choose between making a disputed payment versus risking default.  In *Engineered Medical Systems, Inc. v Despotis*, 2006 WL 1005024 (S.D. Ind. Apr. 14, 2006), the plaintiff EMS sought a declaratory judgment that it could reduce by 50% its royalty payments to the defendant for the remainder of a patent contract term, based on the defendant's alleged

---

another open provision would have prohibited any of Veyance's affiliates from acquiring more than fifty percent interest of Veyance's senior secured loans. *Id.* at 4, 8.

misconduct. The plaintiff was in a similar Catch-22 situation: if the plaintiff did not make the full payment, and the court later rejected the plaintiff's argument that only 50% of the payment was required, the plaintiff could be in default and the defendant could terminate the entire license agreement. *Id.* at *3, n.2. Plaintiff thus moved to deposit the future payments with the court pursuant to Rule 67. The court held that the plaintiff could deposit 50% of the future payments with the court, because that 50% was in dispute. The court reasoned that a Rule 67 deposit was an appropriate method to avoid default, opining:

> [There is] no reason at this time to force EMS to choose between breaching its agreement (and risking termination) or paying Dr. Despotis the 50% of royalties that are in dispute. The parties have presented the court with a genuine dispute over the entitlement to 50 percent of the calculated royalties. Without considering the merits of that dispute, the court concludes that EMS is entitled to deposit half of the 2004/2005 royalties with the court pending the outcome of this litigation.

*Id.* at *3.

Likewise, in *Gulf States Utilities Co. v. Alabama Power Co.*, the parties disputed whether GSU owed money under power supply contracts. 824 F.2d 1465 (5th Cir. 1987). GSU brought an action seeking to void the contracts, and then "moved to deposit in the district court's registry the funds allegedly due to [the defendants]" pursuant to Rule 67. *Id.* at 1474. The district court granted, and the Fifth Circuit affirmed, the order on the ground that, since GSU asserted that the "contracts should be set aside . . . . the funds genuinely are in dispute." *Id.* at 1475. In particular, the Fifth Circuit noted that a Rule 67 deposit was an appropriate method to avoid a default: "GSU could have breached its contracts by and withheld money from Southern and the court, but we see no reason to force GSU to do so. We do not fault GSU for making deposits under Rule 67 as the district court decides those are proper." *Id.*

In other situations, courts have likewise granted Rule 67 motions to prevent parties from having to choose between making disputed payments and risking default. For

example, in *Antaeus Enterprises v. SD-Barn Real Estate, LLC*, one of the defendants (National Pasteurized Egg) owed money on a mortgage, but was not sure who to pay, i.e., the plaintiff or the other defendant, who were litigating that issue. *See* Memorandum of Nominal Defendant at 2-3, and Order Permitting Deposit of Funds in Court Under Fed. R. Civ. P. 67, at 2-3, in *Antaeus Enters. v. SD-Barn Real Estate, LLC*, No. 05 Civ. 6396 (S.D.N.Y. 2007) (Memorandum and Order attached hereto as Exhibit A). National Pasteurized faced the Catch-22 that if it paid the funds to the plaintiff then it might be in default to the other defendant and risk foreclosure. So to avoid a possible default, it requested permission under Rule 67, which the court granted, to pay the amounts to the court while the court decided who was entitled to the money. *See* Ex. A: Order Permitting Deposit of Funds in Court Under Fed. R. Civ. P. 67, at 1-3. Similarly, in *Kansas City Southern Railway v. Borrowman*, the plaintiffs brought suit to enjoy the collection of an annual assessment. 2009 WL 3188305 (C.D. Ill. Sept. 30, 2009.) The plaintiffs then requested permission, which the court granted, to deposit the disputed assessments with the court, in order to avoid the defendants' threatened tax sale, which would be triggered by the failure to pay. *Id.* at *2.

A Rule 67 deposit is thus an appropriate mechanism, at no harm to LBSF, to preserve the status quo and avoid this inequitable situation of Veyance being forced to choose between making disputed payments or risking default.

## IV.   CONCLUSION

For the foregoing reasons, this Court should enter an order granting plaintiff's Rule 67 motion to deposit funds with the Court.

Dated: New York, New York
  December 1, 2009

Respectfully submitted,

LATHAM & WATKINS LLP

By _____

Christopher Harris
885 Third Avenue
New York, New York, 10022
Telephone: (212) 906-1200

KASOWITZ, BENSON, TORRES &
   FRIEDMAN LLP
Andrew K. Glenn
Trevor J. Welch
1633 Broadway
New York, New York  10019
Telephone:  (212) 506-1747

*Attorneys for Plaintiff*
*Veyance Technologies, Inc.*

**Exhibit A**

BRUCE R. EWING (BE0724)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, NY 10177
Telephone: (212) 415-9200
Fax: (212) 953-7201

Attorney for Nominal Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------- x
                                     :

| | |
|---|---|
| ANTAEUS ENTERPRISES, INC., EUGENE BRODY, JAMES H. RAND and WILLIAM G. COOLING, | : |
| Plaintiffs, | :    05 Civ. 6396 (LAK) |
| - v. - | : |
| SD-BARN REAL ESTATE, L.L.C. and L. JOHN DAVIDSON, | : |
| Principal Defendants, | : |
| -and- | : |
| NATIONAL PASTEURIZED EGGS, L.L.C., | : |
| Nominal Defendant. | : |

------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF NOMINAL DEFENDANT'S MOTION FOR LEAVE TO MAKE DEPOSIT IN COURT UNDER FED. R. CIV. P. 67 AND LOCAL RULE 67.1

### Preliminary Statement

Nominal defendant National Pasteurized Egg, LLC ("NPE" or "Nominal Defendant") submits this memorandum of law in support of its motion for Leave to Make Deposit in Court pursuant to the Federal Rule of Civil Procedure 67 and Rule 67.1 of the Local Civil Rules of the Court. NPE seeks an order directing the Court to deposit funds in the amount of $296,125.35, plus interest of $1,233.86 in the Court's registry.

<u>Statement of Facts</u>

Commencing September 19, 2003, NPE made interest payments to SD Barn in the sum of $2,467.71 that continued each month through August 6, 2004, and on or about July 29, 2004, NPE paid $296,125.37 principal to defendant SD-Barn Real Estate L.L.C. ("SD-Barn") under the terms of its July 31, 2003 promissory note to SD-Barn in the amount of $592,250.73 (the "NPE Note"). Commencing September 3, 2004, NPE made interest payments to SD Barn in the sum of $1,233.86 that continued each month through June 3, 2004. (Affidavit of D. William Toone ("D. Toone Aff.") at ¶ 3 and Exs. 1 and 2.)

On July 31, 2005, NPE is scheduled to pay its second and final payment in satisfaction of the outstanding principal ($296,125.35) and a final interest payment due under the NPE Note to SD-Barn of $1,233.86 (the "Agreed Sum") to fully satisfy the obligation of NPE under the Note. (D. Toone Aff. at ¶ 4.)

By letters dated July 1, 2005, plaintiffs informed NPE that SD-Barn had defaulted on its promissory notes to plaintiffs and requested that NPE make (and SD-Barn instruct NPE to make) all future payments under the NPE Note directly to plaintiffs. (D. Toone Aff. at ¶ 5 and Ex. 3.) To date, SD-Barn has failed to instruct NPE

to make all future payments under the NPE Note directly to plaintiffs. (D. Toone Aff. at ¶ 6.)

On July 7, 2005, the undersigned spoke with Davidson concerning the Agreed Sum and inquired if he would authorize NPE to pay plaintiffs their accelerated *pro rata* shares of this Sum. Davidson failed to comply with this request. (D. Toone Aff. at ¶ 7.)

In order to fully satisfy its obligation under the NPE Note and in light of SD-Barn's default under its promissory notes issued to plaintiffs, NPE seeks leave of Court to order the Clerk to deposit the Agreed Sum into the Court Registry pending the Court's determination of the parties' rights. (D. Toone Aff. at ¶ 8.)

NPE admits that the Agreed Sum is due and owing under the NPE Note and, in light of plaintiffs' July 1, 2005 letter and Amended Complaint, NPE believes that it should direct the Agreed Sum to plaintiffs. The amount of the Agreed Sum satisfies the remaining amount due from NPE to SD-Barn under the NPE Note, and is sufficient to release NPE from all liability under the NPE Note, including foreclosure upon the assets it pledged to SD-Barn to secure the NPE Note (the "Collateral"). (D. Toone Aff. at ¶¶ 9 and 10.) Unless the deposit is allowed and NPE released from liability on the Agreed Sum, this Sum may continue to generate interest and SD-Barn may foreclose upon the Collateral. In contrast, if the deposit is allowed, NPE may be excused from any further obligations on the Agreed Sum, including foreclosure upon the Collateral and any interest obligations caused by the principal defendants' refusal to properly direct payment of this Sum to plaintiffs. (D. Toone Aff. at ¶ 11.)

## Argument

### I.    THE COURT SHOULD GRANT NPE'S MOTION TO MAKE THE DEPOSIT IN COURT.

Federal Rule of Civil Procedure 67 governs the deposit of a disputed fund to the Court during litigation. Fed. R. Civ. P. 67 provides:

> In an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or the disposition of any other thing capable of delivery, a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such sum or thing, whether or not that party claims all or any part of the sum or thing. Money paid into court under this rule shall be deposited and withdrawn in accordance with the provisions of Title 28 U.S.C., §§ 2041, and 2042; the Act of June 26, 1934, c. 756, § 23, as amended, (48 Stat. 1236, 58 Stat. 845), U.S.C. Title 31, § 725v; or any like statute.

The purpose of depositing a fund to the Court under Rule 67 is to relieve the depositor of responsibility for the disputed fund while the parties litigate their differences with respect to that fund. *See Cajun Elec. Prower Coop., Inc. v. Riley Stoker Corp.*, 901 F.2d 441, 444-45 (5th Cir. 1999) (purpose of Rule 67 is to relieve depositor of responsibility for fund in dispute while parties "hash out their differences with respect to it."). Rule 67 is appropriately invoked where there is a dispute concerning the funds. *Baxter v. United Forest Products Co.*, 406 F.2d 1120, 1126 (8th Cir. 1969), *cert. denied*, 394 U.S. 1018, 23 L. Ed. 2d 42, 89 S. Ct. 1635 (1969), citing *United States v. Balfour, Guthrie & Co., Ltd.*, 192 F. Supp. 60, 61 (S.D.N.Y. 1961).

Whether a deposit should be allowed in any particular case is a matter of the Court's discretion. *LTV Corporation v. Gulf States Steel Inc. of Alabama*, 969 F.2d 1050,

1063 (D.C. Cir. 1992). Once funds are deposited, the Court should then determine ownership and make disbursements. *See Baxter v. United Forest Products Co.*, 406 F.2d 1120 (8th Cir.) (noting that District Court holds deposits as trustee for the true owner), *cert. denied*, 394 U.S. 1018 (1969); *Manufacturers Hanover Overseas Corp. v. Southwire Co.*, 589 F. Supp. 214, 221 (S.D.N.Y. 1984).

## II. NPE'S DEPOSIT IS PROPER UNDER FEDERAL RULE OF CIVIL PROCEDURE 67.

Here, depositing the remaining funds held by NPE under the NPE Note to the Court is appropriate and proper. NPE is a party; the pending suit seeks, as at least part of the relief sought, a judgment of money; and the money in dispute is suitable for delivery to the Court. Further, plaintiffs and the principal defendants dispute claims to the funds sought for deposit by NPE. Plaintiffs claim rights under the Collateral Assignment of Promissory Note dated July 2003 (the "NPE Assignment") to receive payment from NPE of all funds currently held under the NPE Note, while the principal defendants refuse to provide NPE authorization to distribute any part of this payment directly to plaintiffs.

Plaintiffs have alerted NPE to their claim to the disputed funds. NPE agrees that it should direct payment to the plaintiffs in light of SD-Barn's default on and the subsequent acceleration of various nonrecourse promissory notes between plaintiffs and SD-Barn. NPE holds the disputed funds under the terms of the NPE Note and seeks to avoid any possible future liability to the plaintiffs or principal defendants, including foreclosure upon the Collateral by SD-Barn.

Unless the deposit is ordered and NPE released from all liability on the sum held by NPE, this sum may continue to generate interest and SD-Barn may proceed to foreclose upon the Collateral. In contrast, if the deposit is allowed, NPE will be excused from any further obligations on the Agreed Sum, including interest obligations and possible foreclosure upon the Collateral caused by the principal defendants' refusal to properly direct payment of this sum to plaintiffs.

Conclusion

For the foregoing reasons, this Court should grant NPE's motion for Leave to Make Deposit in Court Under Fed. R. Civ. P. 67 and Local Rule 67 and to relieve NPE of all further liability there under.

Dated: New York, NY
      July 21, 2005

Respectfully submitted,

By:       <u>/s/ BRUCE EWING</u>
      Bruce R. Ewing (BE0724)
      DORSEY & WHITNEY LLP
      250 Park Avenue
      New York, NY 10177
      Telephone: (212) 415-9200
      Fax: (212) 953-7201

      D. William Toone (Of Counsel)
      WA Bar No. 6473
      Of Counsel
      Dorsey & Whitney
      1420 Fifth Avenue, Suite 3400
      Seattle, WA 98101
      Telephone: (206) 903-8800

Fax: (206) 903-8820

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ANTAEUS ENTERPRISES, INC., et al.,

                            Plaintiffs,

            -against-                                    05 Civ. 6396 (LAK)

SD-BARN REAL ESTATE, L.L.C., et al.,

                            Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/17/05

**ORDER**

LEWIS A. KAPLAN, *District Judge.*

            The motion for leave to make a deposit in court [docket item 4] is granted.

            SO ORDERED.

Dated: August 12, 2005

                                            Lewis A. Kaplan
                                    United States District Judge